Thank you, Greg. Our second case this morning is United States of America v. Maximus Prophet, number 18-3776. Mr. Ballinger? Thank you, Your Honor. My name is Scott Ballinger. I'm sorry for the interruption. It appears somebody has the live stream still running. That could be me. I apologize, Your Honor. It was me that had the live stream still running in the background. Thank you for your time. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Ms. Anna Cecile Pepper and Mr. Zev Klein, who will be presenting argument for Mr. Prophet. Ms. Pepper will handle the opening, and Mr. Klein, any rebuttal. Thank you, Mr. Ballinger. Welcome, Ms. Pepper. Thank you. May it please the Court. This case presents a question of first impression left open by fault. Whether a substantive error in the application and interpretation of the advisory guidelines is cognizable in the presence of aggravating factors that substantively prejudice the defendant. Well, Ms. Pepper, before we get to that, don't we need to decide the issue of whether Amendment 801 is clarifying or is it a substantive change? Right, Your Honor. We believe this amendment is clarifying because it solved an ambiguity that was made apparent by the case law. That's what the holding in Marmolejos said to look for when deciding whether an amendment was clarifying or retroactive. And here... Actually, Marmolejos said a split in the case law really doesn't tell us anything because it could be clarifying an ambiguity. So when you say there is an ambiguity, I mean, if there's an ambiguity here, then I would agree with you. Perhaps we have to say it's clarifying, but how is this statute, how is the amendment, how is there an ambiguity that was present in the amendment, I mean, in the guideline before? So as Judge Posner said in his opinion in Robinson, we do not presume strict liability. And that is why this amendment was ambiguous because some said that there was a mens rea requirement and others did not. So that's why the text of this amendment was ambiguous. And that's why this amendment is clarifying and should be retroactive on direct appeal. And that takes... Did it not, excuse me, did it not add an express mens rea requirement where none existed before? Yes, it did, Your Honor. But this is just making explicit what other circuits had already found implicit, because we don't presume strict liability. And moreover, to say that just because it adds a word or doesn't add a word is kind of the bright line test that I believe this court... Pretty big word though, mens rea. Right. But I think when courts were already reading this word into the guideline, because we don't presume strict liability, then that's why this is clarifying instead of retroactive. What do you say about the argument that really there was no ambiguity and the courts that read a mens rea into it were more concerned about imposing this enhancement where someone didn't really understand. In other words, it was a concern for the harshness, not to resolve a real ambiguity. What do you say to that argument? Well, I think the language of Robinson makes clear that they were doing an interpretive act, rather than just considering whether something was reasonable or unreasonable. And deciding whether a statutory term contains a mens rea element is kind of a regular act of interpretation. And that's why it wasn't just a reasonableness analysis here, but an interpretive act. So that takes me back to Doe versus Volk. And in Doe, this court found that non-constitutional claims under the mandatory guidelines where the error places the defendant in a fundamentally more culpable category of offenders with substantive prejudice to the defendant is cognizable. And this court should now hold that Doe extends to situations like Mr. Proffitt's. We do not believe that this court's decisions in Volk would prevent such a holding here, and we believe the reasoning of Doe demands it to hold otherwise would mean that no egregious error of the advisory guidelines, no matter how prejudicial or how substantive, could ever be cognizable. And we believe Volk is not controlling in this case, as in footnote 4, it left open whether a defendant who can show prejudice and a substantive error can get relief under the advisory guidelines. And Mr. Volk couldn't make this argument because his sentence was 10 years below the unenhanced guideline range. And so he had no prejudice. He could argue no prejudice. He did not have a cognizable claim. But here Mr. Proffitt does because he was placed into a fundamentally more culpable category of offenders because of of interpretation that increased the appropriate sentence and resulted in increased jail time. This is a kind of aggravating circumstances and prejudice that made Mr. Doe's claim cognizable and should make Mr. Proffitt's claim cognizable as well. Both Marmolejos and Doe were decided prior to Booker. Shouldn't that make a difference here? Um, no, it should not. So Doe recognized that cognizability should turn on the actual world of sentencing. And even at the time Booker was decided, judges did have authority to depart from the guidelines. And from the perspective of the defendant, the prejudice is the same, you know, a mistake that... Are you suggesting that departures pre-Booker are the same as variances post-Booker? Um, no, no, I'm not suggesting that, Your Honor. But I do know that judges did have some discretion before Booker. And even today, after the guidelines are advisory, they are controlling, as the Supreme Court recognized in Pew, in four out of five cases. And they were intended to and still do exert controlling influence in most cases. How can you say that Falk is not controlling here? I mean, it held that an incorrect career offender enhancement, which is huge, absolutely huge, is not cognizable. Well, that's because there's no... How do you think the situation rises to a level greater than that? Well, in that situation, Your Honor, there was no prejudice. I mean, even without the incorrect career offender enhancement, he was sentenced to 10 years below the correct guideline without that incorrect... But the court didn't decide it based on prejudice, did it? I believe that... It really set a fundamental defect, which inherently results in a complete miscarriage of justice, or an admission inconsistent with the rudimentary demands of fair procedure. And Doe was an unusual case because it was mandatory. So, I mean, we need to say Doe is different. It's a mandatory career offender. And Doe said it's very narrow. This is extremely narrow. So I don't know how you can say that Falk isn't controlling here. Well, Falk didn't consider... They did consider the fundamental defect inconsistent that would cause a miscarriage of justice in the procedural admission. But it did leave open the question of Doe about aggravating circumstances and substantive prejudice. And this is where Mr. Doe's holding fell. And this is also where Mr. Profitt's case falls. But this was not where Mr. Falk's case could even fall because there was obviously no prejudice to him when he was sentenced 10 years below the correct guideline range. But it makes a statement. It says, because the guidelines are advisory and merely one factor considered within a sentencing court's discretion, an incorrect career offender enhancement is not a fundamental defect, inherently resulting. Seems like we made a pretty strong statement. Yes, but it still didn't consider the aggravating circumstances framework and whether a claim for a petitioner under that framework where they can present substantive prejudice is cognizable. And so that's a question that is left open for this court to decide today and that it should decide in Mr. Profitt's favor. Today, the guidelines do exert controlling influence, even though they are just a factor the court considers. In most cases, they are the controlling factor that determines a defendant's sentence. Well, then what case is your best case for the proposition that, aha, here we have the kind of sentencing defect that warrants 2255 or 2241? What's your best case? I believe Doe is our best case. Because when there's an error that substantively prejudices the defendant and gives them more time in jail than was proper, then that harms their interest. And so I think Doe is our best case for that, Your Honor. Well, so you fundamentally, you want the two points for distribution removed in the guidelines calculation, right? Yes, that is what we were asking for, Your Honor. All right, but that puts your client in a guidelines range of 121 to 151 months, correct? Yes, it does. And there's nothing at prevent or impair the district judge from imposing the same 168-month sentence by doing an upward variance, right? Yes, but in this case, if you all were to hold for Mr. Profitt on the Amendment 801 claim, then the fact that the district court made an error in sentencing him, and there's a controlling decision from this court that says that they did make that error, would undoubtedly play a role in their considerations for resentencing purposes. But that would be only as the supervised release, correct? Yes. Yes, there's no way his sentence is going to be reduced. He served it. He served the longer sentence. Now, the court could take into account that he served a longer sentence than he should have in reducing a supervised release term, correct? Yes, they could. And that's where the holding that Amendment 801 is retroactive would have an impact because the district judge could take into account that he served more time than he was supposed to, that he shouldn't have been classified as a distributor under the guidelines. And for that reason, they could take time off of his period of supervised release. And that's also why we believe this case still presents a live case for controversy. So, Mr. Profitt in the past had no ability to bring this claim before Amendment 801. His direct appeal, all then available case law, held that mere use of a peer-to-peer file sharing network constituted distribution. And so, this is the first time that he's really been able to assert this type of claim. Well, but when we have Posner's decision, we have courts saying, wait a minute, this isn't right. There's something wrong here. There's an ambiguity. I mean, that cuts against your argument that it's just clarifying and not a whole substantive change that might not have been anticipated. Isn't that correct? If it's clarifying and there were these courts saying, wait a minute, there's a problem here with the mens rea component, shouldn't he have filed at that point to say, ah, yes? No, Your Honor, because all then available case law pointed against him. And in Hussman, this court kind of adopted the government's reasoning that the guideline was a strict liability guideline. But the issue was out there, was it not? The issue was out there. Not until later and closer to the time that this court decided Hussman, and I think for a pro se litigant, this clearly presented the first opportunity, especially after the court's language in Hussman did seem to make clear that the court would adopt a strict liability viewing of the guideline. And so any claim for him to file would have come across as frivolous at that point. And so I think this really presented the first opportunity for him to be able to make that kind of argument. And any other type of reasoning really puts petitioners in a catch-22 because either the amendment is substantive and they can't take advantage of it, or it's clarifying. And so they procedurally defaulted it. And that seems unfair. But even if this court believes that... Let me just challenge you on that, Ms. Pepper, because I'm not sure I'm persuaded by the notion that an argument that was actually accepted and found persuasive by a circuit court of appeals could be frivolous. Is that what you're saying? No, I'm not. But in 2009, when we raised this direct appeal, every circuit court that had considered this issue said it was a strict liability guideline. And then in 2015, this court seemed to adopt kind of the strict liability interpretation advocated for by the government. And so in 2015, around that time, before Amendment 801, when this circuit implicated that it would adopt the strict then to try to bring this type of claim. And so Amendment 801 has really presented his first opportunity to be able to assert he was incorrectly sentenced in this circuit. And then I would like to reserve the rest of my time for rebuttal. Okay. Any other questions for Ms. Pepper, Judge Sirica? No. Judge Rendell? No, thank you. All right. Thank you, Ms. Pepper. We'll hear from Ms. Warden-Rogers. Thank you. Can you hear me all right? Yes. Okay, great. Good morning. May it please the Court, Haley Warden-Rogers on behalf of the United States. Your Honors, this case is moot for the reasons explained in our briefs, but on the merits, Proffitt's claim cannot survive under 2255 for three independent reasons. It's untimely, second or successive, and not cognizable, as the Court held in Folk. So the only way his claim can survive is if it can pass through the narrow saving clause exception of 2255E, as this Court recognized in Dorsonville. Are you conceding that Amendment 801 is clarifying and not substantive? No. No. That would be a merits issue that would only be necessary to reach if the claim is cognizable, timely, and not second or successive. So certainly— Isn't it the other way around? Habeas is only going to be allowed if it's retroactive, isn't that correct? Certainly. Judge Rendell, if you were to reach that issue first, and you could, as long as you believe there's a lot of controversy, then our position, as we stated in our briefs, is that Amendment 801 is a clarifying amendment. Alternatively, the case could be resolved on the cognizability question. Your position is that it's clarifying and not a substantive change? I'm sorry. Our position is that it's a substantive change and, therefore, not retroactive to begin with. Did I misspeak? My apologies. Yes. But I mean, if it's based on that issue, it's game, set, match, correct? Correct. Yes. Correct. What do we do with the— In Amendment 801— Excuse me. What do we do with the appellate courts that did find some form of mens rea? Yeah. Does that not show there was an ambiguity in the interpretation? Our position is that the language was clear, but that some courts felt that that was too harsh and that, therefore, they added a mens rea that didn't exist previously to the distribution enhancement. And, in fact, that's what the Commission ultimately did in the adoption of Amendment 801 by looking at what was perceived to be too harsh of a result with the advent of peer-to-peer technology and decided that, in light of that, the distribution enhancement should be applied more narrowly. The distribution enhancement, notably, unlike in Mar-a-Lago, the language of the guideline itself was changed, not just the commentary. And the old version of 2G2.2B3F, the distribution enhancement for two points, focused on the offense itself. The offense involved distribution, and distribution, as Your Honor knows, was and is broadly defined for purposes of the guidelines, more broadly than the offense of distribution. The new version of the distribution enhancement after Amendment 801 focuses on the defendant rather than the offense. It says, the defendant knowingly engaged in distribution. And, Jen Drebdel, as you pointed out, Mar-a-Lago tells us that whether an amendment is clarifying or substantive turns on the language. And here, we see that the language changed, not just the words, but the meaning, changing the focus from the offense to the language. One of our points, too, is that to the extent Amendment 801 really did clarify a preexisting ambiguity, it should have been anticipated. That argument could have been brought, both in the district court and in direct appeal, and certainly in the first 2255 petition. And because it was not, Mr. Profitt can't show the high bar to meet the equitable tolling requirements, even if a change in the law were enough for equitable tolling, and this court has said it's not. So, at the end of the day, regardless whether it's substantive and non-retroactive, or it is clarifying, he can't meet the requirements of 2255 because his petition was untimely. He also can't meet the 2255 bar because this is an unauthorized second or successive motion, and 2255H tells us that second or successive motions can be brought under 2255 only for constitutional errors that have been newly recognized by the Supreme Court and made retroactive, or for newly discovered evidence of actual innocence. As this court observed in Dorsonville, this kind of scenario... There's some background noise. Is anyone else hearing that background noise? I don't think it's from me, Your Honor. I apologize. Judge, this is Greg. I also was hearing some background noise, too, but I'm not exactly sure where it might be coming from. Okay. I'm sorry. My apologies. No, no. My point is merely that even setting aside the issue in folk and whether it's distinguishable in our position is that it is not. This petition, this motion, can't survive under 2255 because it's barred as untimely and as an unauthorized second or successive petition which couldn't meet the gatekeeping requirements of 2255H. As such, the only way that Mr. Profitt's claim could be heard is if it is cognizable under 2255E, the saving clause, which is what was discussed in Dorsonville. Now, Dorsonville adopted an extremely narrow exception to 2255 for federal prisoners whose convictions were invalid under a new interpretation of law. In other words, where they were convicted of a non-offense, actual and legal innocence. Now, this court in Bruce in 2017, Bruce v. Warden of Lewisburg, interpreted Dorsonville as embodying a separation of powers analysis whereby a conviction for a non-offense can't stand because the courts can't decide what conduct is criminal. Likewise, Bruce suggested that Dorsonville might extend to a situation where a prisoner is serving a term of imprisonment that exceeds the statutory authorized sentence. Here, we have the mere possibility of prejudice, the possibility that if a plenary resentencing were to happen, he might be found to not have known about the file sharing properties of the software he was using for 10 months to download hundreds of files. And even if the district court were to find that he didn't possess that knowledge, it wouldn't be obligated to reduce the term of imprisonment and it wouldn't be obligated, certainly wouldn't be obligated to reduce the term of supervised release, which is in no way connected to the guideline range. And indeed, the supervision, the term of supervision imposed here of 15 years is less than the guideline recommended amount of life for this type of offense. If you lose this appeal, the district judge could change the term of supervised release, right? Yes, that is a possibility. Yes. All right. And that's why the case is in moot. Well, our position is that it is moot because, well, two reasons. First and foremost... If he could get a benefit, I mean, having his supervised release period reduced is a benefit to him, is it not? Yes. Yes. Well, then how could it be moot? How could it be moot when we could enter an order that would give him a shorter term of supervised release? That seems axiomatic that it's very much live and very important to him because he'd like to have his supervised release term reduced. Right. Well, I think it's important to back up and note that as the Supreme Court held in Spencer, there's no presumption of collateral consequences from a sentencing error when the sentence has been served. No, but this is not... But he has challenged his whole sentence here. And there's a presumption of collateral consequences. Your cases, Berkey and Spencer, are distinguishable. They're where the court is trying to find collateral consequences. Here, as Judge Gardner mentioned, he could get a supervised release term. We're squarely under Jackson, which says that the possibility is enough when he's challenged the reasonableness of supervised release as part of his whole sentence. I don't understand how to rely on these other cases. So, Jackson and also Scripps, the recent decision, the defendant there was actually challenging the sentence as a whole or the sentence of supervision. He has never challenged the reasonableness of his term of supervision. And therefore, our position is that because his challenge is solely to the guideline term of imprisonment, he has to show collateral consequences. No, his challenge is to his supervised release. As to his term of imprisonment is really moot. But he's challenged his whole sentence, including his supervised release. And the supervised release is a very live issue, as Judge Hardiman notes. So, our position is that he's never challenged the term of supervision. He's only challenged the guideline range and requested that his term of sentence, his sentence of imprisonment, be reduced. And as a result, he's entitled to arguably an equitable exercise of the district court's discretion to reduce the term of supervision. He's never challenged his term of supervision as being excessive or unreasonable in his appeal in either of his 2255 motions. But in Scripps, it wasn't rendered moot by his release from incarceration. The motion challenged the validity of its sentence as a whole, which included the term of supervised release that he was still serving. So, that's enough. So, in Scripps, Your Honor, Scripps was an allocution error where the judge failed to give the defendant an opportunity, or rather, didn't ask the defendant if he wished to speak. There, a failure to allocute or failure to give opportunity to allocute does necessarily affect the entire sentence, as opposed to here, where it's a guideline error that affects only the term of supervision. No, but it could affect only the term of supervision. Well, you're saying as a practice. Sorry, only the term of the imprisonment. Yeah. His term of supervision is not tied to the error alleged here. The allocution error is relevant and tied to the sentence as a whole, both the term of imprisonment and the term of supervised release. Here, what we have is a challenge solely to the guideline range, which affects only the term of supervision, or the term of imprisonment, not the term of supervision. How can you say that? I mean, it affects the whole sentence. I mean, if somebody knows that it's 34, not 32, it affects the whole sentence. The guideline range affects the whole sentence? Yeah, I guess. Well, I mean, I was a district court judge. I sentenced people. And absolutely, the guideline range is going to affect what I'm going to do across the board. Including the term of supervision. Our position, Your Honor, is that they are two separate pieces. The guidelines themselves don't attach the term of supervision to the guideline range. They are calculated separately. And the judge imposes supervision, as the Supreme Court noted in Johnson, for reasons that are independent and different from the term of imprisonment. Here, too, it's important to note that even as the court said in Jackson, the burden is on the petitioner to prove a collateral consequence that's traceable to the challenged portion of juvenile mail, a 2011 case. Here, the term of supervised release is in no way linked to the guideline range, the challenged guideline range. And it's justified by different concerns, as we noted in our brief and appears in the appendix at page 31 and 34. Also, I think notable is that the supervised release term begins upon the actual date of release, as the Supreme Court noted in the Johnson matter. It's not upon the end of the hypothetically correct term of supervision if we were dealing with consecutive sentences, where a finding by this court that he served too long in prison would necessarily result in a shorter overall consecutive sentence, a shorter term overall. Here, on the other hand, he's only entitled at most to a discretionary determination by the district court. And he can obtain that through 3583. It's also notable that Johnson, where in that case, it was clear that the defendant had overserved a term of imprisonment. Here, it's not clear for the reasons we've stated. But even if that were the case in Johnson, the Supreme Court didn't suggest that the appropriate remedy was a plenary resentencing. The court emphasized that he would have an opportunity to seek a discretionary reduction of supervised release under 3583E. Our position is that the same result should obtain here. He has already served the entire term of imprisonment, which he has challenged. His only challenge is to the guideline range, which affects the term of imprisonment. And ultimately, his only form of release here is not through collateral review, but through the 3583E mechanism. Our understanding is that he has already served a year of supervised release, so the entire scope of remedies under 3583E is available to him. Assuming we get to the merits, what's your view as to the most appropriate grounds to decide the case? I know you've got alternatives stacked upon alternatives, so I'm pressuring you to give us your view as to what the Occam's razor is, at least from the government's perspective. I think probably the cognizability issue under Dorsonville is where the rubber meets the road. Even if this is deemed to be a clarifying amendment, and our position is that it's substantive, the only way his claim could survive on collateral review is if it can meet the Dorsonville standard of basically a miscarriage of justice akin to actual innocence. And a two-point guideline error simply isn't the type of fundamental defect that gives rise to the error that's cognizable, whether on an initial 2255 petition as in full, or much less on a saving clause petition via the Dorsonville exception under 2245. If we decided substantive and not clarifying, do we even get the cognizability? You need not. Our position is that you can decide the case either way. You can say this is a non-retroactive amendment, and that would resolve the case basically reaching the merits. Or, I mean, that's what he wants is a finding that this is a retroactive amendment. If it's not a retroactive amendment and the substance of his argument is wrong, and that's our position, then he can't obtain relief regardless of whether this claim is cognizable. I'm assuming if we were to find it's clarifying, there's probably not a whole lot of implications for those who have been sentenced because they presumably there's no ability from a time standpoint to go back and file something. So I'm just wondering the government's position that we don't decide that issue is to me somewhat curious that you wouldn't press us to decide, listen, this is substantive. Forget about it. Don't come back. Oh, no. I certainly would appreciate a decision that this is a substantive and non-retroactive amendment. It's also important to note, though, that in general, a guideline error, a two-point guideline error particularly under the advisory guidelines is not the type of claim that should be cognizable on collateral review, whether in an initial 2255, as in the Folk case, or under the Dorsonville exception. That would have a broader impact and would clarify the scope of collateral review in our circuit and reduce the burden on the district judges and, of course, the court as well. Okay. That's interesting because I thought your substantive argument was the strongest argument that you had. I agree, Your Honor. I think it's a very strong argument, but I also think that the Dorsonville point is very strong, and that is because Dorsonville itself recognized that if that decision, if the saving clause rationale were to extend to any number of errors, then that would eviscerate Congress's intent in enacting AEDPA and limiting the situations in which a collateral attack could be launched. What do you say to Petitioner's desire to say that Folk really doesn't control here? Yes. So, we disagree for two reasons. First of all, Proffitt has not preserved an aggravating circumstances argument in his opening brief or in the district court. He has always argued that this was a miscarriage of justice under the fundamental defect prong of Davis and Hill, as well as the discussion that this court made in Folk. Also, our position is that possible prejudice, the possibility of a reduced sentence is never going to be sufficient to satisfy the fundamental defect standard. That's the reasoning of Folk, and we think that aggravating circumstances where there's a requirement at least of proving actual prejudice wouldn't be possible in an advisory guideline setting. Now, the aggravating circumstances argument, to the extent the court reaches it, it's never been decided as a standalone third basis. Reed itself suggests that aggravating circumstances requires preservation as well as actual prejudice, and he did not preserve it. And then finally, even if Folk could be distinguished on that basis because of the footnote four, to get through the Dorsonville saving clause under 2255e to show that 2255 is inadequate or ineffective, he would still need to prove a miscarriage of justice on par with being imprisoned for non-criminal conduct. And so regardless of whether Folk might be distinguishable, and we don't think it is, this case is not cognizable on collateral review. You want sort of a clear holding, as I understand it, Ms. Ward-Rogers, that because post-Booker, the guidelines are advisory only, district judges are not hamstrung in imposing upward or downward variances, and because of that, a guideline's miscalculation alone is not sufficient to render EDPA challenges cognizable. Is that your overarching point? Yes, that's our position. Under the advisory guidelines, a collateral attack is not available for an advisory guidelines error. Now, of course, we know from Marlena Martinez and other cases that a guideline error, regardless of an affirmative showing of prejudice, can be the subject of a direct appeal. But as this Supreme Court has recognized, collateral attack is not a substitute for direct appeal. And so while the court will presume prejudice in the context of a direct appeal, on a collateral attack, a guideline error is simply not the kind of fundamental defect that justifies undoing a final judgment. Okay. Judge Sirica, do you have any other questions for Ms. Ward-Rogers? No, I don't. Judge Rendell? No, thank you. All right. Thank you, Ms. Ward-Rogers. We're going to hear a rebuttal now from Mr. Klein. Good morning, Your Honors. I wanted to begin by responding to a couple of points that the government's advocate raised. Number one, in terms of mootness, in Johnson, the Supreme Court noted that although a criminal defendant is not entitled to a reduction in his supervised relief due to excess time served in prison, the Supreme Court did say that there was great equitable considerations, which the resentencing court would consider upon resentencing the defendant. What do you say to the government's argument that he didn't, that the error is not tied, that his claim is not tied to an error that has to do with his supervised release, and he has not challenged the reasonableness of supervised release? What do you say to that argument that they're making? So the Doe Court, and when it imported the reasoning of the Narvaez Court from the Seventh Circuit, explained that when there's an error in the sentencing, that colors the entire process, particularly when it's the kind of error which places the defendant in a fundamentally more culpable category of offenders. An offender convicted of distribution as opposed to mere possession or receipt of contraband is in a fundamentally more culpable category of offenders. And for that reason, this case is extremely close to Doe. The only difference is with regard to whether the reasoning in Doe, which explicitly recognized in aggravating circumstances, basis for collateral relief is available under the advisory and not only the mandatory guidelines. Indeed, Judge Rovner in the Seventh Circuit's case of Hawkins, dissented from that opinion and explained that under the Narvaez reasoning, which this court imported through its Doe holding, the relevant distinction of Booker is not a relevant distinction in terms of collateral relief, both before and after Booker. Whether the guidelines were advisory or mandatory, the procedure was the same. Sentencing judge calculated correct guidelines range, was entitled to depart from the correct guidelines range, and was required to rationalize any reason for deviating from the guidelines range. If that's true, this defendant never had one clear shot at challenging. This defendant, Proffitt, never had a clear shot at challenging his enhancement to his distribution enhancement under the guidelines. Indeed, for that reason, this claim is cognizable and able to be backdoored in through 2255E, which is the savings clause. When you say he didn't have a shot, isn't that inconsistent with the record of my recollection? Maybe I'm misremembering, but I thought he challenged the two-point bump for distribution in the district court. He argued that he did not distribute and the district court specifically did not make any findings. He then argued on direct appeal that his sentence was unreasonable and this court affirmed, but there was no holding regarding the distribution enhancement, whether it should be applied to him. He argued it in the district court, so he knew it was a live issue. He knew that was consequential in the district court's thinking. Whether or not he was using Limewire was consequential to the district court sentence, wasn't it? Yes, and he mentioned that he had no idea that there was file-sharing capabilities due to his use of Limewire, and more importantly, the district court, the district judge listened to that, took it into consideration and imposed the sentence, right? So what's the problem? Well, the problem is that the district court made no findings that he in fact had the requisite knowledge, which now the clarifying amendment of 801 requires the district court to make in order to sentence a defendant under the distribution enhancement. And this is where the perplexing results is most manifest. So had Mr. Proffitt been convicted under the statute of distribution, he would have been able to attack that on collateral appeal and he would be able to be afforded relief. Whereas now that the district court- Right, and that gets into the cognizability issue, right? Because the reason he'd be able to challenge that is because it would be a due process violation to be convicted of a crime where the elements weren't proven. But here, he wasn't convicted of the crime of distribution, it's just an issue for the district court's discretion under section 3553A, right? Yes, your honor. That is absolutely correct. So if it's the district court's discretion under 3553A, if the guidelines calculation is erroneous, why is that inherently a miscarriage of justice or an aggravating circumstance when the district judge retains plenary power to impose any sentence within the statutory range that could be below the guidelines range? And this is precisely what I think Judge Ruggner was getting at in dissent in the Hawkins case. And that's because the defendant, even though the guidelines are advisory and similarly when they are mandatory, the defendant has a right to be sentenced properly and not to have a mistake being made in the initial calculation of the guidelines range. Meaning, even though there's plenary discretion afforded to the district judge, there still is a process which needs to be followed. And in this case, Proffitt didn't have the benefit of that fair process. Right at the outset, he was- Wait, wait, wait. Hold on a minute. Hold on. Because he was sentenced under the right guidelines range at the time. You're relying on 801, which comes by many years later. So the district court made no mistake at the time of sentencing in terms of calculating the guidelines range, right? Correct. We need to- All right. And the reason we police procedural unreasonableness so carefully on direct appeal is that we want to make sure the trial judges accurately calculate the guidelines. So here we've got a case where the trial judge did accurately calculate the guidelines at the time. And now you're claiming many years later, things have changed and you want to attack the sentence collaterally, which is a much higher burden than trying to show procedural unreasonableness on direct appeal. Right? Indeed. That's why we need to reinforce this rule that this is a clarifying amendment. Because once it's a clarifying amendment and it's reaffirmed many times. Indeed, Mar-a-Melejos' test is whether the guidelines amendment is consistent with the original language. And the government seems to argue that a mens rea of knowledge is inconsistent with the original guideline language. And that just doesn't seem very fair to call the Seventh Circuit or the Second Circuit to be flatly rejecting the words of the guidelines in their holdings that there was a mens rea requirement of knowledge in the distribution enhancement of the guidelines. When were those cases decided again? Refresh my recollection. The two second case, second and Seventh Circuit cases. Yeah. So just to set up the timeline, because this is a really important part of our argument, of which why Profitt never had one clear shot at challenging this. In 2008, Profitt was sentenced. In 2009, his direct appeal was confirmed right then the government had briefed in latent that there were no other, there was no circuit in the country, which had held a knowledge requirement for the distribution enhancement. In 2014, this court in Huntsman imported that reasoning when it explained that there was this distinction between the crime as opposed to the sentence of distribution. And it wasn't until 2015 where the Second Circuit in Baldwin found there to be a mens rea requirement. And then November, 2016, Amendment 801 comes out in October, 2017, this case is initiated. And it's our submission that until the Second Circuit showed up with its Baldwin holding in 2015, Profitt could not have had any argument. And even in 2015, once the Second Circuit held that there was a knowledge requirement, his argument was foreclosed through this court's holding in Huntsman the year before. And Amendment 801, the guidelines drafters indeed, right, they use the specific words that this is a clarifying amendment, they then go on to say, we adopt the reasoning of the Second Circuit. And the reasoning of the Second Circuit was that they were clarifying the guidelines. And therefore, it would be retroactive. If that's true, we think this is also sufficient to get this in under the savings clause. 2255 is inadequate or ineffective anytime that there is either a substantive or procedural shortcoming. In Dorsonville, this court held that it was substantive errors would invoke the savings clause. In a later case, the district courts were holding that procedural errors would never be able to access the savings clause. And this court, in affirming the district court decision to dismiss the habeas claim, specifically held that procedural errors are grounds for the savings clause. The court in Cradle said so, and the court has continuously reaffirmed that, including in this year in Warden Fortenberry. And under our view, if cognizability is symmetrical between 2255A and the savings clause of 2255E, it would seem that having placed profit in a category of offenders at the outset of sentencing, which colored his entire sentencing procedure, would be cognizable and be able to be admissible through 2241E. And just one last point, if I can make, is that the government tries to raise an issue that is second or successive. And in our reply brief on page six, we point to the Hertz and Liebman treatise where they cite number of cases from the Second Circuit dating back to the 70s and 80s, where this issue seems to have been laid to rest. In that, even though he previously applied for a collateral attack, the fact that the court construed it as a 2241 motion, rather than a 2255 motion, is sufficient to preserve his first attack under 2255. All right, thank you, Mr. Klein. Anything further, Judge Schroeder? No, thank you. Judge Rendell? Nothing, no. Thank you. All right, thank you. Thank you, Mr. Klein. The court is grateful for the pro bono assistance of the Virginia Appellate Clinic. We thank you, Mr. Ballinger, for your supervision. And we thank Ms. Pepper and Mr. Klein for the excellent arguments. And we also thank Ms. Warden-Rogers as well on behalf of the government. The court will take the matter under advisement. And I thought the briefing was really exceptional. Well done on both sides. I agree. Yes, absolutely. Very helpful. Thank you.